And proceed with our next argument, which is Rodriguez versus Sessions. Thank you. All set. Yes. Your honors, and may it please the court, my name's Joseph Myers. I'm a law student intern at Jerome Frank Legal Services Organization, here under the supervision of Minor Ahmad and Minor Arguello on behalf of Christian Rodriguez. ICE agents seized Christian Rodriguez without reasonable suspicion and based on his race during a retaliatory indiscriminate raid targeting the New Haven Latino community. There are three primary reasons here for remand. The first is that Mr. Rodriguez was unconstitutionally seized based on his enduring the seizure and egregious Fourth Amendment violation. Second, the raid sought to punish the city of New Haven for exercising. I thought that he appeared at a place where a raid was in progress, driving the car of a person who was a person of interest in that investigation because he was the brother of someone for whom the agents had a warrant. And there was no, and that individual said he had no identification, but it was in his car. Your Honor, Mr. Rodriguez arrived at a large parking lot behind a multi-unit condo that also served other multi-use buildings. That's at JA 203 and there's a photograph at 377. At the time he arrived, all that ICE agents knew was that he was a Latino man arriving there and they immediately seized him. And they said, who are you? That is possible, Your Honor, but when- He didn't have any identification of his own, and he explained what he was doing there, yes? Well, that was after the seizure, Your Honor. Well, why is that a seizure? He shows up there, or if it is a seizure, is that not something that when you've got a raid in progress and somebody suddenly appears at this early morning hour, is it not at least reasonable for the officers to ask, who are you and what are you doing here, of anybody? Two answers, Your Honor. To the first, the IJ credited that Mr. Rodriguez felt hemmed in, compelled to answer, and intimidated at the time that ICE officers approached him. That's at JA 12. And there's nothing in the record that would- Reasonable suspicion seizure, is there any evidence that anybody else showed up at that hour and how they were treated who were not Latino? Not in the record, Your Honor, no. So why aren't we in a situation where anyone who shows up at that point, it's reasonable for the officers to say, what are you doing here? Who are you? There's nothing in the record that would suggest that they were taking safety precautions, because there's nothing suggesting they frisked Mr. Rodriguez, asked about- I didn't say anything about safety. Somebody shows up at the scene of this raid, and the agents are out there, right? They're out there for a reason. They're not up in the apartment with the person who's being interrogated, right? Yes, Your Honor. So when somebody comes up in a car to that location, and the agents are sort of at the perimeter of that location, what is unconstitutional about their asking anyone who shows up, who are you and what are you doing here? Your Honor, we would say that both the seizure and the arrest were unconstitutional, because that never ripened a probable cause, based on the factors that the IJ- Is the answer to that, that there is nothing unconstitutional about asking that question, and now we're going on to what probable cause does or doesn't develop from the answers that were given? Well, questions would be permissible, Your Honor, but not if they amount to a seizure without reasonable suspicion here. And there's nothing about, and the IJ recognizes this in citing Mangio-Hurado, a Ninth Circuit case which recognizes that simply approaching immigration enforcement officers would mean that essentially any set of facts was consistent with reasonable suspicion, which just can't be, and that's cited by the immigration- So, and if there was not a reasonable suspicion, is the questioning of somebody under these circumstances where there's a close call as to whether it amounts to a seizure or not an egregious violation? Well, at that stage, Your Honor, the IJ should have taken the evidence in the light most favorable to Mr. Rodriguez, which they did not, and that's an independent reason to remand, Your Honor. Wait, at what stage? This is not the stage of the affidavit. This is the stage of he's already giving testimony, right? Yes, Your Honor, but under Codes of J, we understand that both at the prima facie stage, both the affidavit and the testimony and evidence adduced by Mr. Rodriguez in support of his petition, his application for suppression, should be taken in the light most favorable to him, and that's consistent with this court's rulings, and also a matter of our saying it's itself, Your Honor. You've got the obligation to show egregiousness, and I guess my question is, how do you do that, and in particular, what particular request did you make to obtain the information to show that, number one, there was racial profiling in general, or that there was a violation of egregiousness under Second Circuit case law? Yes, Your Honor, well, there's two indecent penitent effects that contribute to making this arrest improper. The first is the racial motivation, and that's both the lack of reasonable suspicion and probable cause of the seizure, but also the conduct of immigration agents, both before and after Mr. Rodriguez was seized and then arrested. So before you have immigration officers engaging in an immigration sweep in which they're arresting Latino men based on their Latino appearance primarily, that's in the Al Capina Declaration at 391, the Kimberly-Steves Declaration at 388, and the door. What specific request did you make to get information from government agents to actually be able to calculate whether there was discriminatory intent? Because this is obviously one small arrest, 36 people are arrested. It's a much larger operation. This is obviously a very controversial situation in New Haven. I guess my question is, you have to prove that there's an egregious violation. What efforts did you make to get the information from the government so that you could actually explore in detail whether, in fact, there was racial profiling, and what was the government's response? Well, the government has never provided any evidence about our account of this arrest, Your Honor. So initially, Mr. Rodriguez submitted an affidavit, and the immigration judge moved on to a full evidentiary hearing. All of the evidence supported was independently gathered by Mr. Rodriguez, and the government never carried its burden. Independently, Mr. Rodriguez also submitted a subpoena that was never ruled on by the immigration judge. You made a specific request at the very first hearing. Then on the motion to remand, or came back on remand, you made another request to actually have a deposition of the agents. That, in light of the fact that the I-213 was essentially removed so that you don't have any evidence in regard to what exactly happened here, so then, what efforts were made to actually depose the agents to be able to show that there, in fact, was this discriminatory intent, racial profiling, or outrageous conduct? Your Honor, I'm not sure what efforts were taken to actually depose the agents, but I do know that these subpoenas were never granted, and Mr. Rodriguez submitted affidavits, including his own, as well as individuals who were at the scene. But again, at this stage, Your Honor, the evidence should be taken in the light most favorable to him, and in Costa J, this Court recognized that respondents seeking suppression cannot allege facts that are outside of his personal knowledge. So that would include improper motivations on the part of government officers, as well. I'm sorry, I'm just puzzled at what it means that at a hearing, when somebody gives testimony, whatever he says has to be taken in the light most favorable to himself? Well, not everything, Your Honor. Just reasonable inferences should be drawn in his favor. And in Costa J, this Court found that the respondent's testimony wasn't a model of clarity and had some minor contradictions, and yet still found that he had made out a prima facie case of an egregious constitutional violation there. But this is more than a prima facie case, since there was nothing on the other side. You're saying he wins. We should hold that this was outrageous behavior based on this record. Well, you could remand, Your Honor, at what point, under the Barsanis burden-shifting framework, the government, would they be entitled to call agents or introduce testimony, providing a neutral reason for the arrest, at which point the judge could then evaluate the record and all evidence. But under the burden-shifting framework in Barsanis, first, a prima facie case must be made, at which point the burden shifts to the government. And this is consistent with Title VII burden-shifting frameworks, Your Honor, that's recognized. Title VII burden-shifting frameworks don't work that way at a trial. They work that way at a summary judgment proceeding, where we're trying to decide whether to have a trial. And here, that burden-shifting works when somebody submits an affidavit. Are we going to go forward and have a hearing? But the judge said, OK, we'll have the hearing. Well, the way we understand Barsanis, Your Honor, is that first, an affidavit must be submitted that could support an egregious constitutional violation, at which point the respondent must introduce testimony that supports that, and then may adduce additional evidence in support of the allegations of an egregiously unconstitutional arrest. And then the judge looks at what was offered by the respondent and says, that doesn't look outrageous to me. Now what? That's where we are now, right? Yes, Your Honor. But we're supposed to say, it looks outrageous to us. Precisely. We're not. Yes, precisely, Your Honor. You may review that. But that's the record that was made on which you have the burden. Yes, Your Honor. But again, at the prima facie stage, the evidence should be taken the light most favorable to Mr. Rodriguez. And we read Almeida-Amaral and Kosage as saying that the prima facie stage includes both the affidavit as well as the testimony and additional evidence. Once a prima facie case is made, then the government bears the burden of responding to that by introducing additional evidence or testimony from officers who are at the scene. Thank you, Mr. Myers. Thank you. Your side has reserved three minutes for a rebuttal. But did you want to proceed now with that three minutes? Or do you want to wait and hear what the government has to say? We'll wait, Your Honor. Thank you. Thank you. Ms. Wright? Good morning. May it please the court, my name is Jocelyn Wright. I'm here on behalf of Respondent D, United States Attorney General. As we argued in our brief in the second petition for review, because there are two petitions for review before the court today, the court need not reach any of the suppression issues because in our view, the issues are moot. Petitioner has independently and affirmatively submitted into the record before the Board of Immigration Appeals below independent evidence of his alienage, that he is in fact a native and citizen of Ecuador. That evidence, which came from an unredacted U visa petition that he affirmatively and voluntarily submitted before the Board of Immigration Appeals, moots any of the suppression issues in the first petition for review. Now normally, that would be something that the agency would decide, but under the remand is futile exception to the Chenery Doctrine, and we ask that the court in this case, in order to put an end  to the question of whether a U visa application is, I don't know what you'd call it, privileged in a sense, and can't be used against him in this proceeding. I mean, there are certainly some applications that can be made where by regulation, the submission of that application can't be used against you, right? Right. And what about U visas? In the U visas, there are confidentiality provisions in place for U visas, similar to what protects VAWA applications. So if we sent this back to the BIA to decide whether this is admissible evidence against him at this proceeding, and they decided it was or was not, wouldn't you be here on appeal at some point saying we have to defer to that if it's reasonable? Normally, Your Honor, but in this instance, there's no question of admissibility because the government is not the one introducing the evidence. There are confidentiality... Well, usability though. Usability for this purpose. That's the question we're really talking about. Well, yes, but I agree that there are certain confidentiality provisions that protect U visa applications, but like any confidentiality provision, those provisions can be waived by the petitioner. And in this case, by affirmatively submitting an unredacted copy of his U visa petition to the board. I make the argument that the nature of the U visa is such that the government wants people to come forward and assist with the investigation and prosecution of crimes, and that it would therefore be an appropriate public policy to not allow an application of that kind to be used in evidence against a person. Now, apart from the question, is that a good argument or a bad argument? I guess what I'm asking you is, isn't that an argument that is appropriately decided in the first instance by the BIA rather than by us? It may be in the usual case, yes, but as, and this is consistent with the board's decision on his motion to reopen for sua sponte reopening. The issue would not usually come up before the board of immigration appeals or the immigration court necessarily because as the board said, these are completed proceedings and you're asking for sua sponte reopening and giving us evidence of why sua sponte reopening is a good idea. You're giving us evidence that you filed a U visa before USCIS. That is something that the board of immigration appeals has no jurisdiction over. It had no role in the adjudication of the U visa. And so there was no reason for petitioner to submit a copy of the U visa or to even pursue the U visa before the board of immigration appeals. They're arguing that this is a situation like some others that come before us in which the applicant has some basis for proceeding to think that he can proceed and regularize his status in some way. And they're arguing rightly or wrongly, whether belatedly or not, or whether it's appropriate at this stage, they're arguing that this is the kind of case in which the BIA would under some circumstances, at least stay its hand and allow that application to go forward, right? In this case, no, your honor, as the board explained in its decision, there are no exceptional circumstances for it to reopen a closed removal proceeding for the purpose of allowing petitioner. Right, that may be correct, but you're acting as if, I thought you were trying to say, it's like gratuitous. They just sort of show up at the BIA and waive their confidentiality, but that's not what they did. They made a particular kind of application to the board for a kind of relief that the board might have it in its power to give. It might be perfectly fine for the board to say no, but you are asking us to now decide that by doing that, he has mooted all issues with respect to his citizenship. They're arguing no, no, no, because that shouldn't be used in this way. And you're asking us to decide that. Now, if we decide that against you, hasn't the government lost an opportunity to have the expertise of the BIA brought to bear on what that issue is? I'm not asking the court to decide that particular issue. I'm asking the court to decide that it's moot based on that evidence, but if the court just said- But it's moot only if that evidence is usable for that purpose. Oh no, under the futility, well, I understand your point, your honor, but no, if the court is inclined to decide that issue against the government, then we would actually, yes, request that the court remand it instead for the board, for the reasons that you gave. So if we're going to decide it your way, we can decide it ourselves, and that's okay, even if the BIA might have decided it differently in their expertise. But if we decide it against you, then we better invoke their expertise and give you another bite of the apple? Well, no, no, your honor. I think it's just to give the board the opportunity, not necessarily. Let me put it this way. The court, I believe, can decide the mootness issue without delving into whether or not it's a usable piece of evidence, because there's no dispute, it's part of the administrative record. Can I ask you about the sui sponte reopening denial by the BIA? It seems as if, in the decision by the BIA, it said, we're not going to apply the three factors that we usually do in Sanchez-Sosa that we would otherwise do, because the proceeding is closed. But there are some decisions that say that doesn't matter. And my question is, why should it matter? Just because the first petition is closed administratively, why shouldn't someone who is seeking reopening get the same benefit of those three factors that everybody else does? But just because the day after the proceeding is closed, the request is made, why should that matter? Because the difference, I believe, is that in this case, the time and number bars, the time bar, at least, applies. Why? What's the reason for it? Why shouldn't he get the benefit of the three factors test? For a continuance. Sanchez-Sosa governs continuances. Even in sui sponte reopening situation, Sanchez-Sosa says, the BIA is to consider these three factors. And there's no question that in the BIA decision here, it said, we're not considering those three factors under Sanchez-Sosa. It's clear as a bell, right? But my question is, why? Why should the fortuity of the closing of the proceeding matter as to foreclosing the consideration of those three factors by the BIA, what's the reason for it? The reason is that Sanchez-Sosa doesn't apply for reopening. It applies for continuances and ongoing removal proceedings. Whereas, Inari-Yari applies to reopening of a closed removal proceeding. The matter of Arthur says that we can apply this after the proceeding is closed. So, I mean, there's... But I'm looking for a reason why. I mean, we're trying to figure a route here, why it should make a difference whether the administrative proceeding is closed or not, that you don't get the benefit of the three factors being weighed by the BIA. That's my question. Why? I think because in the board's mind, the finality of the removal proceedings takes it out of those considerations because you can file a motion to reopen certainly, but what... Only within the 90 days. Right. After that, it's got to be a sua sponte. Yes, that's correct, Your Honor. And that's what was at issue here. And that's what the board decided it on is based on exceptional circumstances, not based on Sanchez-Sosa or Inari-Yari. It was purely a discretionary denial of sua sponte for failure to establish exceptional circumstances. If those reasons should be relevant, the DHS's response to the request, whether the underlying visa petition here is the U visa is going to be prima facie approvable. It seems like it might be here. He helped prosecuting, he testified against a burglar in New York. And then the reason for the continuance. Well, I think I'm going to get my U visa. Why shouldn't a BIA at least apply those factors? Now, maybe they decide we weighed the three factors and we think we're not going to reopen still. But here they said, we're not even going to apply those factors because the proceedings closed. And that's the reason why, Your Honor, because the proceedings are closed. That is a... Why should that matter is my question. Because it's a closed proceeding. The finality is something that should be taken seriously and should only be disturbed for very serious reasons. Now, the motion for a continuance, that's different because the removal proceedings are still ongoing. And so the weighing of those factors are more relevant. There's no hurdle of disturbing the finality because, for example, in this case, not so much in this case, but for example, if the petitioner had a final order of removal that has gone through the Court of Appeals. What's the virtue of the finality? The finality is he gets removed to Ecuador and he's not going to get the benefit of the U visa because it's over. Oh, he could still get the benefit of the U visa, Your Honor. Yes, but he can still, like any other immigrant visa, he can wait for it from outside of the United States. And the... I'm sorry, Your Honor. Yep, thank you. Can I just ask you a really broader question? As I understand it, so at the first hearing, there was a request, or at least the introduction of the I-213. Yes. And based upon that, the IJ makes a determination that valid arrest. Turns out that the I-213 was of a totally different incident, wasn't involving this particular defendant. Initially at that first hearing, the petitioner was seeking information to address the whole question about racial profiling because obviously this is a part of a much larger picture, racial profiling, together with egregious conduct. And the IJ refused to permit the subpoena. In fact, to this date, the agents who were involved in the arrest have never been questioned. The petitioner has the requirement to show egregiousness, has the requirement to show that there's racial profiling, has this information about this whole operation, but then has been foreclosed constantly on the ability to ask questions about what really happened here. And that obviously would involve questioning of the officers who are engaged in the arrest in the first place. And to today, to today's date, they've never been permitted to ask those fundamental questions. I guess I'll ask you a broad-based question. Is that fair? In this circumstances, yes, Your Honor. Why is it fair to actually not permit the petitioner to address the fundamental questions created by this situation in regard to racial profiling and in regard to egregiousness by preventing them from being able to question the officers who were involved here? As a preliminary matter, I don't think they were prevented from questioning. Let me just step back a minute and I realize I'm over if I could answer. Under circuit law and Supreme Court law, the petitioner has the burden of establishing with an affidavit that a suppression here, the ramification case of egregiousness, not just a Fourth Amendment violation, but one that is egregious. And under Maldonado in the Second Circuit, you can only consider the affidavit and testimony in determining whether petitioner has met his prima facie burden. There are two parties involved, petitioner and the arresting officers. Petitioner has to come forward with his version. There is no one else who can testify as to what happened to him and why he believes he was mistreated or why his constitutional rights were violated and why it was an egregious violation. That's the burden that he had. Now, no. There's a deeper question here, isn't there? I appreciate the fact that the petitioner has to submit an affidavit. The petitioner has some limited information about what happened at the time of the arrest. But reality is, this was a part of a much larger operation. 36 people arrested. Obviously, there were civil lawsuits against DHS, result of this particular case. There must be, or there could very well be, significant information about racial bias on the part of some of the agents, etc. And it would seem to me that logically, if you're part of this much larger operation, that both sides should be able to have the witnesses, in particular the agents, come in and testify as to exactly whether they were engaged in racial profiling, whether they were engaged in egregious conduct. And the fact is, from day one, the petitioner in this case was prevented from asking those fundamental questions. Again, the government doesn't believe he was prevented, Your Honor. The burden never shifted. DHS has the discretion to decide what evidence it wants to submit to prove its case. But the burden never shifted to DHS because the immigration judge repeatedly found the petitioner never met his prima facie burden, never made out a prima facie case. He never met his burden of proof. So under INS versus Delgado in the Supreme Court, the Supreme Court specifically said a petitioner who was contesting the legality of his arrest can only litigate what happened to him. And so to the extent that petitioner is relying on extra affidavits and other evidence to mount a broad-based challenge, that was more appropriate in district court, but in the context of his removal proceedings, that was not an appropriate method for it. You don't actually explore exactly what happened to him. That is the motivation of the agents. You don't look at it necessarily just based upon the actual facts of the arrest itself. You look at that from the broader context because that gives you the ability to actually explore whether there was racial profiling. But before that could happen, Your Honor, he had to establish a prima facie case. And if you look at his testimony and his affidavit, there is nothing in there that would suggest that there was racial profiling. As Judge Lynch pointed out earlier, there was an ongoing immigration enforcement action. Two agents were outside. Everyone else was inside. He knew that there were two men. He said he knew there were police there because his boss had called him and said, come over and give me my car and my documents are in there. The police are here. I need them. He knew there was the police that were present there. Regardless, he drove there without a driver's license and he saw the two men who were waiting at the parking lot and he basically inserted himself into the ongoing immigration enforcement action. It would have been negligent for the agents not to secure the premises and not question him, not approach him when he first came onto the scene and asked who he was and what he was doing there. And so his testimony and his affidavit, there's nothing in there about use of force, about brandishing of weapons. There's nothing in there about racial profiling. All he said is I look Hispanic, but that's not sufficient. If the agents had a valid reason for questioning him, then he hasn't gotten over the initial hurdle of making out a prima facie case of suppression. Actually, the testimony was, and I'll end at this point, but the testimony was that once he showed there was no documentation, he of course is in his pajamas at this very point. Once he shows that there's no documentation, according to him, he is spun around and immediately subjected to arrest and handcuffing. That's his affidavit. His affidavit said that according to his testimony and his pajamas were basically shorts and a t-shirt that he wore to bed. His affidavit says, his testimony was that the agents searched the car and then arrested him or handcuffed him. Can I just ask you a question about procedure here? There was a prior stay motion that was denied by this court. I didn't see any outstanding stay motion that we need to address. Am I wrong about that? And the second question is, is the government intending to remove him before our decision in this case? The stay motion for us, the stay of removal motion is still pending, Your Honor. That's still before the court. What the court decided about, I guess, a year, a month ago was the denial of the stay of proceedings pending the adjudication of the U visa petition. So we still have to act on the stay of removal? The stay of removal, right. Under the forbearance policy? The forbearance policy is currently in effect. And you're being removed. That's correct, Your Honor. He's not in detention. Yes, unless the court has any questions. Thank you. Your Honor, it's Thomas Scott-Railton from Mr. Rodriguez, law student intern. I'd like to begin with Maldonado. Maldonado is inapposite to this case, since it's solely presented evidentiary limitations at the initial affidavit stage, not once an evidentiary hearing had been reached. Furthermore, this court in Kotzebue... The problem I have with this whole thing, and I think the reason why the courts have been reluctant to not just apply the exclusionary rule in these proceedings, in these types of proceedings, is that the only thing that is evidentiary here that is to be suppressed is who this gentleman is and what his citizenship is, right? Well, no, Your Honor, we are... Is there other evidence that's being used against him that was seized from him at that time? Yes, Your Honor. As the immigration judge found, the birth certificate that the government introduced was fruit of that arrest. Right. In other words, it's his identity, right? Look, your client is a citizen of Ecuador. He says so in his U visa application. He is not in status. So based on the potential Fourth Amendment violation that took place at the time of his initial arrest, what you are asking is that... Not that he'd be, like, automatically entitled to stay in the United States forever, right? What you're asking is that this proceeding be sent back without any ability of the government to prove that he's not a citizen of the United States, and then, like, he can go out on the street until such time as they go back. Will they ever be able to get a birth certificate from Ecuador or any other evidence of his citizenship that is not, in some sense, the fruit of the fact that now they know who he is and they're going to go look for that evidence? Well, Your Honor, this court in Pretzanson, which was the companion case to Kotzege, found that the identity evidence would consist in the name, but not the further information that the government used to get the birth certificate, which include parents' names. Yeah, I got it. So they're never... So what happens next? Is he, like, forever... I mean, there's nothing they can do at this point, is there? That is not the fruit of the fact that they know who he is and they have all this information about him. How would they ever be in a position to prove his alienage? If this court did order suppression, that would be the case. Over here, we're asking for remand based on his making a... Yeah, but that's what you're ultimately asking for, right? Is the suppression of... I'm trying to understand how this all is supposed to work. And it's supposed to work that if he was illegally arrested... You know, I'm thinking of, like, the Kerr-Frisbee rule and, you know, cases that say, well, if you get sort of... If you're illegally arrested, you don't get to just go free with a head start at that point, right? And that's kind of what is happening here, is it not? Well, we believe that the government would actually have the opportunity to bear its burden to show that the arrest was lawful on remand before there was any final adjudication of suppression. So here we have the unusual situation, as Judge Sessions pointed out, that the government has withdrawn its only account of the arrest and, in hearings before the immigration judge, refused to put on any more evidence. Right, but the relief that's being requested, ultimately, is to suppress the evidence of who he is and what his citizenship status is. That's the relief that's being requested. We are requesting the suppression of any statements in the birth certificate, and we think under Almeida-Almerol because there was a grossly improper... Right, and if that happens, then what? You know, if the government could provide truly independent evidence from the arrest... How will they ever be able to do... If, by some accident, some other immigration officer who has no knowledge of any of this comes upon Mr. Rodriguez, that officer might develop some new case so long as nobody in investigating that case links it up with this one. But other than that, he's free to go his own way. We do believe that under Pratsanson, if the government doesn't bear its burden, then the evidence should be suppressed, and if they have no independent evidence, then yes. Moreover, his U-Visa application in which he says that he is not a citizen of the United States, that, your argument is, should not be taken into account either. Yes, Your Honor. We believe that under this court's decision, Cao He Lin, it will not uphold an agency decision even based on evidence in the record if it was not before the agency at the time. And after all, isn't the U-Visa application itself a kind of fruit because maybe he would never have bothered to apply for it, and he certainly wouldn't have bothered to bring it to the attention of the Department of Homeland Security rather than the independent USCIS if it weren't for this arrest. That's possible, Your Honor, and that would be one of the questions that would have to be resolved below if the government did seek to reopen in order for addressing whether the U-Visa should be introduced as evidence. And all of this is because this was not merely a Fourth Amendment violation because the exclusionary rule as such does not apply in these proceedings, but was an egregious violation. Absolutely, Your Honor. And we believe, you know, they had the right to ask him questions. However, they did not have the right to seize him initially. They would have required reasonable suspicion specifically that he was unlawfully present. But whether it's a seizure or not is a very close question, is it not? I mean, the argument is, you're agreeing, I think you're agreeing, that if the officer just walked up to him and said, by the way, who are you and what are you doing here? That would not be unlawful. We believe that here... That wouldn't... Can you answer a yes or a no to something like that? Are you saying they weren't authorized to do that? Or are you saying that that would have been okay? Yes or no? Whatever it is, it's fine. I just want to know what... They would be authorized to ask him questions. Okay, but they can't sort of forcibly detain him. And the issue of whether he was forcibly detained turns on his statement that they sort of came up very close to him and he felt hemmed in. Yes? And the positioning of the officers... And the positioning... And that constitutes an egregious Fourth Amendment violation right there before we've done anything else. We believe that when it is based on race, that constitutes an egregious... Wait, wait, wait, wait, wait, wait, wait. No, no, no, no, no, no. Based on race, I thought the idea was they were authorized to come and ask anyone in that circumstance. Why do we think it is based on race if they are authorized to speak to anyone and they speak to anyone, he being anyone who happened to show up? We believe based on the evidence of the raids prior to what occurred with him. Because somebody else in a different circumstance was detained because somebody said, they all look alike, I don't care whether he looks like the guy we're looking for, just detain him. Then that establishes that notwithstanding that two officers had a perfect right to talk to anyone who came in, that their decision to talk to... And the reason they had that right is because it would be a pretty reasonable thing to do in the circumstances that when they talked to this gentleman, this was the proper inferences, this was based on his race and they would have let anybody else walk into the building. Well, Your Honor, he was in a large parking lot behind a multi-unit building. And when he emerged from the vehicle, they seized him immediately. Ah, so it would not have been... for the officers to approach anyone in that parking lot because they had no reason to? Because it was a large parking lot? We believe that they did not have reasonable suspicion that he was unlawfully present in the country at that moment. Therefore, they could have asked him questions at a distance. They could have let him know that he was free to leave, but they could not... But because they came too close to him, that's what makes it an illegal seizure. And that's what makes it outrageous. We believe that that's what makes it a seizure. The lack of reasonable suspicion is what makes it a Fourth Amendment violation. And at the prima facie stage, as the court explained in Cotes de Jay, which involves both the affidavit stage and the testimony stage, here he's made out a case with reasonable inferences drawn in his favor, that he was seized initially and then subsequently arrested based on his race. Judge Underhill, in a case arising from these raids, Diaz-Bernal, found that a sufficient equal protection claim had been pled under the heightened pleading standards on the basis that the raid targeted a Latino neighborhood, that Latino-appearing individuals were arrested, that one individual was detained solely based on speaking Spanish and being Latino-appearing, and that a derogatory comment was made. Here we think we have much more than was shown in Diaz-Bernal. We have not only the comments that were made prior to his arrest, we have the agents actually acting on those comments, saying they all look the same, arrest them, and then doing so, even though the individual in question, Carlos Zacopina. Your point is, in regard to outrageousness, it's not necessarily that it's established at this point, but that you want the ability to be able to question agents in particular, to find out in the broader context whether they were exercising racial profiling or not. And to that extent, you want the ability to be able to question people to look into the outrageous nature of their conduct. And your primary objection, I would assume, and you can correct me if I'm wrong, but is that you will foreclose that option. Absolutely, Your Honor. As this Court recognized in Cotes de Jay, there are some things that the individual in question cannot know. That's why at the prima facie stage, the reasonable inferences are drawn in his favor. All that we ask here is that the government provide some account of the arrest that is not flawed in the way that the I-213 was, that they put officers on the stand, they provide some sort of written account. Here, they've provided absolutely none. And as was true in the Pratsanson litigation, the immigration judge found that where prima facie case had been made and the government refused to put on any evidence as to what occurred in the arrest, that warranted suppression. So we are simply asking for the government to bear its burden based on that prima facie analysis. And finally, your question about the U visa. While it is true that the U visa will not be eliminated if he is deported, he does have a U.S. citizen child in the country. And in addition to reenter the country, he would have to be granted a, placed on an official wait list for which there is a waiting period of many years, and then a further determination of parole would have to be made by the agency. So it's not that he simply is allowed back in. All right, thank you. We'll reserve decision.